JUDGE JONES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 3652**

HUGH JOHN TULLY and PENELOPE CAROL
TULLY, on Behalf of Themselves and All Others
Similarly Situated,

08 CIV

Plaintiffs,

-against-

THE CHARLES SCHWAB CORPORATION,
SCHWAB INVESTMENTS, CHARLES
SCHWAB & CO. INC., CHARLES SCHWAB
INVESTMENT MANAGEMENT, INC.,
CHARLES R. SCHWAB, EVELYN DILSAVER,
RANDALL W. MERK, and GEORGE PEREIRA,

Defendants.

CLASS ACTION COMPLAINT
FOR VIOLAITON OF THE
FEDERAL SECURITIES LAWS

APR 16 2008
U.S.D.C. S.D. N.Y.
CASHIERS

JURY TRIAL DEMANDED

Plaintiffs ("plaintiffs") allege this class action complaint based upon personal knowledge

as to themselves, their own acts and the acts and statements of defendants in which they

participated directly; including the communications with, representations made, and

documentation and information provided to plaintiffs by defendants in the ordinary course of

business, and the investigation of their counsel. Counsels' investigation conducted on plaintiffs'

behalf, included, among other things: (i) an analysis of publicly-available news articles and

reports; (ii) a review and analysis of public filings, including but not limited to Securities and

Exchange Commission filings by defendants; (iii) press releases issued by defendants, and

(iv) other matters of public record. The allegations as to all other matters are based upon

investigation by plaintiffs' attorneys and research of the applicable law with respect to the claims

asserted herein.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought by plaintiffs alleging claims under

Sections 11, 12 and 15 of the Securities Act of 1933 ("Securities Act") against defendants, all of whom are corporations, partnerships or individuals who are members of the Charles Schwab financial services family, as more fully described below, on behalf of a class consisting of those persons who purchased shares of any class of the Schwab YieldPlus Fund (the "Fund") (ticker symbols SWYPX and SWYSX for the two classes) during the period March 18, 2005 through March 18, 2008, inclusive (the "Class Period"), except for defendants, any other affiliates of defendant parent holding company "The Charles Schwab Corporation" (defined below), and the senior executive officers and directors of The Charles Schwab Corporation and/or its affiliates (the "Class").

2.     This case arises from the issuance, underwriting and sale by defendants during the Class Period of Fund shares through registration statements, prospectuses, Statements of Additional Information ("SOAIs") and other sales documents which were in effect during the Class Period (collectively "Fund Prospectus Materials") that contained material misstatements and omissions material to the investment risks of buying Fund shares.

3.     The Fund was expressly described by defendants as an "ultra short-term bond fund." Defendants marketed the Fund to the public as: a "higher-yield[ing]" alternative to money-market funds; with a "goal" "designed to offer higher yields than a money market fund while seeking minimal changes in share price;" and having an "historical ability to minimize its share price fluctuations." Defendants described the Fund as providing "higher yields on your cash with only marginally higher risk, [and therefore] could be a smart alternative."

4.     In fact, the Fund contained materially greater risk than a money market fund, which was not disclosed in the Fund Prospectus Materials. The Fund contained material amounts of highly risky, subprime securities which has caused the Fund to plummet in value

during the current and ongoing "credit crisis."

5.      The Fund's NAV was approximately $9.70 throughout much of the Class Period. The NAV dropped from $9.67 on July 9, 2007 to $7.88 on March 18, 2008, when this action was first filed, an 18.5% decrease.  On April 8, 2008, the Fund's NAV was $6.80, a 29.7% decrease from the July 9, 2007 price.

6.      By comparison, the average loss for this category of fund during the same time period (through March 18, 2008) has been well under 2.0%.

7.      Accordingly, between July 9, 2007 and March 18, 2008, the Fund lost more than $1.1 *billion* in net asset value (even after excluding redemptions from the calculation).

8.      Plaintiffs seek to recover, among other things, damages (including but not limited to rescissory damages) caused to the Class by defendants' violations of Sections 11, 12 and 15 of the Exchange Act.

9.      Plaintiffs are among those who have been injured and damaged by defendants' unlawful conduct.

## JURISDICTION AND VENUE

10.      Plaintiffs bring this action pursuant to §§ 11, 12(a) (2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l and 77o.

11.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 78aa) and 28 U.S.C. §§ 1331.

12.      Venue is proper in this District pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(3).

13.      The defendants maintain at least ten offices within this District from which they transact and conduct business within this District.

14.    The non-natural person defendants offer for sale and sell Fund shares, which are securities, within this District.

15.    In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

**Plaintiffs**

16.    Plaintiffs Hugh John Tully and Penelope Carol Tully acquired shares of the Fund during the Class Period and pursuant to the Fund Prospectus Materials at issue in this complaint, as set forth in the accompanying certification, and have been damaged thereby.  Plaintiffs purchased their Fund shares directly from defendant "Schwab" (defined below) in its capacity as a retail broker-dealer.  Plaintiffs' initial investment in the Fund was monies from the sale of their home.

**Defendants**

17.    The defendants are all affiliated with each other and conduct business under the umbrella of the "Charles Schwab" name, which is one of the largest financial services organizations in the world.

18.    Defendant The Charles Schwab Corporation is the parent company of the Charles Schwab financial services complex.  It is a holding company which engages in securities brokerage, banking and related financial services through its subsidiaries.  The Charles Schwab Corporation is headquartered at 101 Montgomery Street, San Francisco, CA 94104.

19.    Defendant Schwab Investments ("Registrant Schwab Investments") is the

registrant and issuer of the Fund shares under the Securities Act. Registrant Schwab Investments was organized under the law of Massachusetts on October 26, 1990, and is a Massachusetts Business Trust. It is headquartered at the same address as The Charles Schwab Corporation.

20.    Non-defendant Schwab YieldPlus Fund is one of a series of funds issued by Registrant Schwab Investments and is part of the Charles Schwab family of funds. It is an open-ended fund incorporated in the United States. (For purposes of this action, the Fund is also deemed an issuer of Fund shares.)

21.    As of August 31, 2007, the end of the Fund's last full fiscal year, the Fund had $10.7 billion in net assets. As of February 29, 2008, the Fund had approximately $5.0 billion in net assets. As of April 1, 2008, the net assets of the Fund had further shrunk to $1.54 billion.

22.    The Fund has two share classes, Select shares and Investor shares, which are sold pursuant to one prospectus. For the purpose of this action, there are no material differences between the classes. (The only difference between the classes concerns the minimum investment amount, $100 for Investor shares and $50,000 for Select shares.) No distinction between the classes is made in the allegations herein and "Fund" refers collectively to both classes.

23.    Defendant Charles Schwab & Co. Inc. ("Schwab") is the principal operating subsidiary of The Charles Schwab Corporation, and is the principal underwriter for shares of the Fund and the Trust's agent for the purpose of the continuous offering of the Fund's shares. It is a registered broker-dealer and is headquartered at the same address as The Charles Schwab Corporation. It is a defendant herein in both capacities, as the principal underwriter of Fund shares and as the principal operating broker-dealer subsidiary of The Charles Schwab Corporation. Schwab is a wholly-owned subsidiary of The Charles Schwab Corporation.

24.    Defendant Charles Schwab Investment Management, Inc., ("CSIM") is the

investment advisor to the Fund.  As the investment advisor, CSIM oversees the asset

management and administration of the Fund.  As compensation for these services, CSIM

receives an advisory fee from the Fund, which totaled over $75 million for the four fiscal years

through August 31, 2007.  CSIM is headquartered at the same address as The Charles Schwab

Corporation.  CSIM is a wholly-owned subsidiary of The Charles Schwab Corporation.

25.    Defendant Charles R. Schwab (hereinafter sometimes "CRS") is the founder,

Chairman, Chief Executive Officer and a Director of The Charles Schwab Corporation.  CRS has

been Chairman and Trustee of Registrant Schwab Investments and the Fund since 1989. CRS

signed each Registration Statement in effect during the Class Period and he authorized their

signing by the other Individual Defendants.  The Fund's Registration Statement and Statement of

Additional Information state that "[a]s a result of his ownership of and interests in The Charles

Schwab Corporation, Mr. Schwab may be deemed to be a controlling person of the investment

adviser and Schwab."

26.    Defendant Evelyn Dilsaver was President and Chief Executive Officer ("CEO")

of Registrant Schwab Investments and the Fund and signed each Registration Statement in effect

during the Class Period from the beginning of the Class Period through November 15, 2006.

27.    Defendant Randall W. Merk has been a Trustee of Registrant Schwab Investments

and the Fund since 2005.  He also became President and Chief Executive Officer of Registrant

Schwab Investments and the Fund (while remaining as Trustee) in 2007 (after Defendant

Dilsaver left those positions).  Defendant Merk signed each Registration Statement in effect

during the Class Period.

28.    Defendant George Pereira has been Principal Financial Officer and Treasurer of

Registrant Schwab Investments and the Fund since no later than February 2005.  He signed each

Registration Statement in effect since that time.

29.    Excluding CRS, the remainder of the natural person defendants identified above are collectively referred to herein as the "Individual Defendants."

30.    All defendants are collectively referred to as "defendants."

## CLASS ACTION ALLEGATIONS

31.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a Class consisting of those persons who purchased shares of any class of the Fund during the period March 18, 2005 through the March 18, 2008, inclusive, except for defendants, any other affiliates of defendant parent holding company The Charles Schwab Corporation, and the senior executive officers and directors/Trustees of The Charles Schwab Corporation and/or its affiliates.

32.    Plaintiffs seek damages, including but not limited to rescissory damages.

33.    Members of the Class are so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits both to the parties and the Court.

34.    As of February 29, 2008, the Fund had approximately $5.0 billion in net assets.

35.    While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are more than one thousand members of the Class located throughout the United States.

36.    This action is properly maintainable as a class action for the following reasons:

(a)    The class consists of more than one thousand purchasers and is thus so numerous that joinder of all members is impracticable.

(b)    There is a well-defined community of interest among class members in the

questions of law or fact affecting the Class which predominate over questions affecting only individual members. Those common questions include but are not limited to:

      (i)      Whether statements made by defendants to the investing public in the Fund Prospectus Materials constituted material misstatements and material omissions;

      (ii)      Whether defendants violated the Securities Act through the acts alleged herein and harmed the members of the Class;

      (iii)      Whether each defendant participated in the course of conduct complained of herein; and

      (iv)      Whether plaintiffs and other members of the Class have sustained damages, and the proper measure of damages (rescissory damages or otherwise);

      (c)      The claims asserted by plaintiffs are typical of the claims of class members.

      (d)      Plaintiffs are members of the Class and will fairly and adequately protect the interests of the Class. They have no interest antagonistic to those of the other class members. Plaintiffs have retained as counsel attorneys who are knowledgeable and experienced in securities litigation, as well as class and complex litigation.

      (e)      A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

      (i)      Given the size of individual class members' claims, most class members could not afford to seek legal redress individually for the wrongs the defendants committed against them;

      (ii)      When defendants' liability has been adjudicated, claims of all class members can be determined by the Court;

(iii)    This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense and ensure uniformity of decisions;

(iv)    This action does not present any undue difficulties that would impede its management by the Court as a class action; and

(v)    The names and addresses of the members of the Class can be ascertained from the books and records of defendants or their agents.

## THE MISSTATEMENTS OF MATERIAL FACTS AND MATERIAL OMISSIONS CONTAINED IN THE FUND PROSPECTUS MATERIALS

37.    The initial Fund Registration Statement and prospectus became effective a number of years prior to the beginning of the Class Period on March 18, 2005.  At that time, defendants began to offer for sale shares of the Fund pursuant to those materials.

38.    The first Registration Statement which was in effect during the Class Period is dated and became effective on November 15, 2004.  Thereafter, defendants filed nearly identical registration statements, SOAIs and prospectuses throughout the Class Period, which were used to offer and sell Fund shares.  Those SEC filings included:  November 15, 2004, December 10, 2004, February 25, 2005, September 2, 2005, November 7, 2005, November 14, 2005, January 23, 2006, February 27, 2006, June 30, 2006, September 5, 2006, September 14, 2006, November 15, 2006, December 15, 2006, February 28, 2007, July 6, 2007, August 31, 2007, September 5, 2007, September 19, 2007, November 14, 2007 and February 27, 2008.

39.    The Fund Prospectus Materials contained numerous material misstatements and statements made materially inaccurate through the omission of material facts. These include the following statements:

THE SCHWAB YIELDPLUS FUND(R) is an ultra short-term bond fund,

designed to offer high current income **with minimal changes in share price**. (prospectus at first page, unnumbered)

The Fund **seeks to keep the average duration of its portfolio at one year or less**.  (prospectus at first page, unnumbered)

The [F]und['s goal] seeks high current income **with minimal changes in share price** (prospectus at 2)

To help **maintain share price stability and preserve investor capital**, the fund **seeks to maintain an average portfolio duration of one year or less**. (prospectus at 2)

The fund's investment strategy is designed to offer higher yields than a money market fund **while seeking minimal changes in share price**. (prospectus at 2)

The [F]und **invests primarily in investment-grade securities**. (prospectus at 4)

Investment style risk.  **In exchange for seeking minimal fluctuation in share price**, **the fund may offer lower long-term performance** than stock investments or certain other bond investments.  (prospectus at 6)

The Schwab YieldPlus Fund is an ultra-short bond fund **that seeks a high degree of share price stability**. **Because of its historical ability to minimize its share price fluctuations**, the fund is less vulnerable to market timing strategies than other types of fixed income or equity mutual funds.  (prospectus at 39).

The Fund provided "higher yields on your cash with only marginally higher risk, [and therefore] could be a smart alternative."  (emphases added)

40.    During the Class Period (and now), defendants' website stated concerning the

Fund:

The Schwab YieldPlus Fund® is designed with your income needs in mind. The fund's objective is to seek high current income with minimal changes in share price. . . .

The YieldPlus Fund offers:

● Monthly Income—The fund invests in a large, **well-diversified** portfolio of taxable bonds and distributes its income on the last day of each month (emphasis added).

● Low Duration—To minimize changes in share price or NAV, the fund seeks to maintain an average portfolio duration of one-year or less. However, in volatile markets, the fund may experience a higher degree of NAV fluctuation.

- 10 -

● Active Portfolio Management—The fund is actively managed by a seasoned team of taxable bond portfolio managers[1] who are supported by a team of credit and market analysts. The team use[s] a disciplined approach designed to deliver competitive total returns, which has become the foundation of managing Schwab's other fixed income funds.

41.     Each of the above-quoted excerpts contained material misstatements and failed to disclose certain material facts necessary to make the statements not misleading, as set forth below.

42.     The Fund Prospectus Materials omitted to disclose numerous material facts that were required to be disclosed in order to render the statements made therein not materially misleading at the time each was declared effective and thereafter, including but not limited to:

(1)  Defendants failed to disclose and omitted material information that the Fund was concentrated in a single risky industry or market segment, with over 50% of the Fund assets invested in the mortgage industry;

(2)  Defendants failed to disclose and omitted material information that the Fund, in pursuit of higher yields, abandoned its objective of high current income with minimal change in share price.

(3)  Defendants failed to disclose and omitted material information that the Fund, in pursuit of higher yields, abandoned its objective to maintain share price stability and preserve investor capital.

(4)  Defendants failed to disclose and omitted material information that the Fund, in pursuit of higher yields, abandoned its objective of seeking minimal fluctuation in share price;

---

[1] This is a reference to defendant CSIM.  There is a direct link on the Schwab website page to the prospectus which identifies and discusses defendant CSIM.

(5)  Defendants failed to disclose and omitted material information that the duration of a material portion of the bonds in the Fund's portfolio was greater that two years;

(6)  Defendants failed to disclose and omitted material information that there existed no primary market for most of the bonds in the Fund's portfolio, and in fact, the only market was, for many, the issuers themselves;

(7)  Defendants failed to disclose and omitted material information that the asset backed securities in the Fund's portfolio which were backed by mortgages were highly vulnerable to becoming illiquid;

(8)  Defendants failed to disclose and omitted material information that the net asset values of the Fund were materially speculative;

(9)  Defendants failed to disclose and omitted material information that the Fund was not well-diversified;

(10)  Defendants failed to disclose and omitted material information that the Fund's credit and market analysts did not have any real expertise in valuing the mortgage backed securities they purchased, or assessing their risk; and

(11)  Defendants failed to disclose and omitted material information that the Fund relied blindly on the ratings given these securities by the rating agencies who were paid by the bond's issuer.

43.    A reasonable investor would have viewed these undisclosed facts, severally and jointly, as having materially altered the total mix of information available to him or her.  This is so because the potential investor would reasonably think that the facts described herein but never disclosed would cause him or her to undertake a materially increased investment risk in connection with the Fund shares they purchased during the Class Period because the Fund was

investing in securities which were materially more risky than disclosed. Nevertheless, defendants did not disclose the facts in the subparagraphs immediately above in any of the Fund Prospectus Materials which were in effect during the Class Period.

44.     Defendants had a duty to plaintiffs and the Class to disseminate Fund Prospectus Materials that did not contain material misstatements and which disclosed all information about the Fund which would be material to plaintiffs and the Class in their decisions to purchase or sell shares of the Fund.

45.     For example, one independent duty to disclose arose from Form N-1A, the registration and prospectus disclosure form for mutual funds under the Securities Act, which states in relevant part:

> C. Preparation of the Registration Statement
> 1. Administration of the Form N-1A requirements: . . . .
> **(b) The prospectus disclosure requirements in Form N-1A are intended to elicit information for an average or typical investor who may not be sophisticated in legal or financial matters**. The prospectus should help investors to evaluate the risks of an investment and to decide whether to invest in a Fund by providing a balanced disclosure of positive and negative factors. Disclosure in the prospectus should be designed to assist an investor in comparing and contrasting the Fund with other funds. . . .
>
> 2. Form N-1A is divided into three parts:
> (a) Part A. Part A includes the information required in a Fund's prospectus under section 10(a) of the Securities Act. The purpose of the prospectus is to provide essential information about the Fund in a way that will help investors to make informed decisions about whether to purchase the Fund's shares described in the prospectus. (emphasis added).

46.     Defendants were required by Form N-1A to disclose the facts concerning the Fund identified above, which they failed to disclose.

47.     A second independent duty to disclose arose from the materiality of defendants' misstatements and omissions, and that the information that defendants failed to disclose was

material.

48.     Had plaintiffs and the members of the Class known of the facts not disclosed in the Fund Prospectus Materials, they would not have purchased their Fund shares.

49.     The defendants' unlawful conduct allowed them to gain more than $75 million in investment advisory fees.  For the fiscal years ended August 31, 2004, 2005, 2006 and 2007, the Fund paid net investment advisory fees of $7,584,000 (gross fees were reduced by $0), $14,676,000 (gross fees were reduced by $0), $19,899,000 (gross fees were reduced by $0), and $33,797,000 (gross fees were reduced by $2,000), respectively.

**Damages**

50.     The Fund's NAV at the beginning of the Class Period was $9.69 per share.

51.     The Fund's NAV dropped from $9.67 on July 9, 2007 to $7.88 on March 18, 2008, an 18.5% decrease.

52.     On April 8, 2008, the Fund's NAV was $6.80, a 29.7% decrease from the July 9, 2007 price.

53.     Accordingly, between July 9, 2007 and March 18, 2008, the Fund lost more than $1.1 *billion* in net asset value (even after excluding redemptions from the calculation).

54.     The Fund's Annual Report stated that its fund category is the Morningstar Ultrashort Bond category, which has lost only 1.87% year 2008 to date (to April 8, 2008) and has lost only 0.81% over the one year period from April 8, 2007 through April 8, 2008, inclusive.

55.     When comparing the results of the Fund with the results of the fund category chosen by the defendants themselves, damages to the Class are in the hundreds of millions of dollars and may well exceed $1 **billion** when compared to the average loss for this category of fund, due to the Class Members' investment in Fund shares as a result of defendants' unlawful

conduct.

56.    Defendants cannot attribute this decrease to general market conditions or the

bursting of the credit market bubble because the facts plead heretofore contradict such a defense.

57.    As of April 1, 2008, the net assets of the Fund had shrunk further to $1.54 billion.

### Incorporation By Reference

58.    Since Fund shares (as is the case with mutual fund shares generally) were

continuously offered to the public pursuant to a prospectus and a SOAI during the Class Period,

subsequent prospectuses and SOAIs were routinely filed with the SEC and became effective.

59.    All of the Fund's registration statements, prospectuses, SOAIs, annual reports,

semi-annual reports and N-CSRs, which were in effect or filed at any time during the Class

Period, including but not limited to those cited or quoted from herein, are incorporated herein by

reference.  All other documents, including but not limited to sales literature, which are cited or

quoted from herein, are incorporated by reference.

### NO SAFE HARBOR

60.    The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

Virtually all of the specific statements pleaded herein were not forward-looking or were not

identified as "forward-looking statements" when made.  To the extent there were any forward-

looking statements upon which plaintiffs base their claims, there were no meaningful cautionary

statements identifying important factors that could cause actual results to differ materially from

those in the purportedly forward-looking statements.  Alternatively, to the extent that the

statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants

are liable for those false forward-looking statements because at the time each of those forward-

looking statements was made, the particular speaker knew that the particular forward-looking

statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of defendants who knew that those statements were false when made.

## COUNT I
### For Violation of § 11 of the Securities Act

61.    Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

62.    Plaintiffs do not allege that the material omissions and misstatements set forth herein were made intentionally, knowingly or recklessly by defendants.  Rather, the conduct alleged herein was innocent, negligent or grossly negligent.

63.    Plaintiffs do not incorporate in this Count any allegation above to the extent it contains facts which are unnecessary or irrelevant for purposes of stating a claim under Section 11, including that they do not incorporate any allegations that might be interpreted to sound in fraud or that relate to any state of mind on the part of the Section 11 defendants.

64.    At the time of their purchases of Fund shares, plaintiffs and the other members of the Class were without knowledge of the facts concerning the untrue statements or omissions herein.  Plaintiffs could not have reasonably discovered those facts prior to, at the earliest, August 2, 2007.

65.    The action was brought within one year after the discovery of the material misstatements and material omissions and within three years after the Fund shares were offered to the public through the Fund Prospectus Materials.

66.    With respect to this claim for liability under Section 11 of the Securities Act, the defendants are:  Registrant Schwab Investments (the issuer of the shares sold pursuant to the Fund Prospectus Materials), Schwab as the principal underwriter of the Fund's share offering, CRS and the Individual Defendants (each as a signatory to at least one Registration Statement which was in effect during the Class Period).

- 16 -

67.    Registrant Schwab Investments and Schwab participated in the preparation of, issued, caused to be issued and/or participated in the issuance of the registration statements, prospectuses and SOAIs, each of which was inaccurate and contained material misstatements or omitted to disclose, inter alia, certain material facts necessary to make the statements made not misleading, as set forth herein.

68.    CRS and the Individual Defendants each (a) participated in the preparation of, caused to be issued and/or participated in the issuance of the registration statements, prospectuses and SOAIs, and (b) signed at least one Registration Statement in effect during the Class Period which was inaccurate and contained material misstatements or omitted to disclose, inter alia, certain material facts necessary to make the statements made not misleading, as set forth herein.

69.    Schwab was the underwriter of the Fund's shares.

70.    Plaintiffs allege that all statutory affirmative defenses available to only underwriter defendant Schwab under Sections 11 and 12 (concerning which the defendant underwriter bears the burden of proof) are not available to the underwriter defendant in this action because the underwriter defendant herein is a "captive" underwriter (as well as the principal operating subsidiary of The Charles Schwab Corporation), inextricably entwined with their issuer because all are wholly-owned, directly or indirectly, by the Charles Schwab financial services complex.  Further, even if available to the underwriter defendant, they are affirmative defenses which that defendant must plead and prove and which plaintiffs need not allege. Nevertheless, plaintiffs address the underwriter affirmative defenses below.

71.    While the following concerns an affirmative defense which can be raised by Schwab only (as underwriter), and concerning which it bears the burden of proof, nevertheless,

plaintiffs allege that Schwab did not make a reasonable investigation, did not possess reasonable grounds to believe, and did not believe, that the statements contained in the Fund Prospectus Materials were true, were without omissions of any material facts and were not misleading. Schwab participated in the preparation of the Fund Prospectus Materials, and was required to investigate with due diligence the representations contained therein to confirm that they did not contain material misstatements or omit to state material facts, but Schwab did not perform this investigation with due diligence.

72.     Plaintiffs and the other members of the Class purchased Fund shares in the continuous offering (which makes all shares in and of themselves traceable to the offering).

73.     Although not required to be alleged with respect to this claim because it is an affirmative defense to be alleged and proven by defendants, nevertheless, plaintiffs allege that they and the other members of the Class purchased their Fund shares as a direct and proximate result of, and without knowledge of, the material misstatements and omissions in the Fund Prospectus Materials.  Had plaintiffs and the other members of the Class known of the omitted material facts, plaintiffs and the other members of the Class would not have purchased or otherwise acquired shares of the Fund.

74.     As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and the other members of the Class suffered substantial damages in connection with their purchases of Fund shares during the Class Period in an amount of at least hundreds of millions of dollars.

75.     By virtue of the foregoing, Registrant Schwab Investments, Schwab (as underwriter), CRS and the Individual Defendants each violated Section 11 of the Securities Act and is liable to plaintiffs and the other members of the Class, in an amount to be proved at trial.

**COUNT II**

**For Violation of § 12(a)(2) of the Securities Act**

76.    Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

77.    Plaintiffs do not allege that the material omissions and misstatements set forth herein were made intentionally, knowingly or recklessly by defendants.  Rather, the conduct alleged herein was innocent, negligent or grossly negligent.

78.    Plaintiffs do not incorporate in this Count any allegation above to the extent it contains facts which are unnecessary or irrelevant for purposes of stating a claim under Section 12, including that they do not incorporate any allegations that might be interpreted to sound in fraud or that relate to any state of mind on the part of the Section 12 defendants, other than strict liability or negligence.

79.    The action was brought within one year after the discovery of the material misstatements and material omissions and within three years after the Fund shares were offered to the public through the relevant Fund Prospectus Materials.

80.    With respect to this claim for liability under Section 12 of the Securities Act, the defendants are all defendants:  The Charles Schwab Corporation; Registrant Schwab Investments; Schwab (in both its capacities as principal operating subsidiary and as underwriter); CSIM; CRS and the Individual Defendants.

81.    Each of these defendants was a seller, offeror, and/or solicitor of purchases of Fund shares for their own financial benefit, or, even if a sale was solicited by one of these defendants without financial benefit to itself, then that defendant solicited the purchase for the financial benefit of its' parent company or affiliate.

82.    Defendants' acts of selling, offering and of solicitation included but were not limited to the preparation of the materially misleading Fund Prospectus Materials disseminated

to public investors.

83.     The Charles Schwab Corporation advertises its proprietary mutual funds, including the Fund, on (among other places) its website under the generic name "Charles Schwab" and also under the name "Charles Schwab & Co. Inc."  Charles Schwab Investment Management, Inc. is also mentioned on the defendants' website.  Any revenues received by The Chares Schwab Corporation's subsidiaries and affiliates are to its ultimate financial benefit.

84.     Schwab as broker-dealer sells Fund shares through its stockbrokers for its own financial benefit.

85.     Registrant Schwab Investments solicited purchases of Fund shares for its own financial benefit; or, even if solicited by Registrant without financial benefit to itself, then Registrant solicited the purchases for the financial benefit of The Charles Schwab Corporation, the Fund, Schwab (as both principal operating subsidiary and underwriter) and CSIM.

86.     Schwab, as underwriter, solicited purchases of Fund shares for its own financial benefit; or, even if solicited by Schwab without financial benefit to itself, then Schwab solicited the purchases for the financial benefit of The Charles Schwab Corporation, Registrant Schwab Investments, the Fund, Schwab as principal operating subsidiary and CSIM.

87.     CSIM solicited purchases of Fund shares for its own financial benefit; or, even if solicited by CSIM without financial benefit to itself, then that defendant solicited the purchases for the financial benefit of The Charles Schwab Corporation, Registrant Schwab Investments, the Fund, and Schwab as both principal operating subsidiary and underwriter.

88.     CRS solicited purchases of Fund shares for his own financial benefit; or, even if solicited by CRS without financial benefit to himself, then that defendant solicited the purchases for the financial benefit of The Charles Schwab Corporation, Registrant Schwab Investments, the

Fund, and Schwab as both principal operating subsidiary and underwriter.

89.    The Individual Defendants solicited purchases of Fund shares for their own financial benefit; or, even if solicited by each of them without financial benefit to themselves, then that defendant solicited the purchases for the financial benefit of The Charles Schwab Corporation, Registrant Schwab Investments, the Fund, Schwab as both principal operating subsidiary and underwriter, and CRS.

90.    The Fund Prospectus Materials contained misstatements of material facts and omitted to state other facts necessary to make the statements made not misleading.

91.    While the following concerns an affirmative defense which can be raised by defendants, and concerning which each of them bears the burden of proof, nevertheless, plaintiffs allege that each of these defendants cannot prove that it:  (a) did not know of such material misstatement or omission and (b) in the exercise of reasonable care could not have known of such material misstatement or omission.

92.    Plaintiffs and the other members of the Class purchased in the continuous offering (which makes all shares in and of themselves traceable to the offering).

93.    Plaintiffs purchased their Fund shares pursuant to the Fund Prospectus Materials, and without knowledge of the material misstatements and omissions in the Fund Prospectus Materials.

94.    As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and the other members of the Class suffered substantial damages in connection with their purchases of Fund shares during the Class Period, in an amount of at least hundreds of millions of dollars.

95.    By virtue of the foregoing, each defendant on this Count has violated Section

12(a)(2) of the Securities Act and is liable to plaintiffs and the other members of the Class, in an amount to be proved at trial.

96. Plaintiffs, individually and representatively, hereby elect to rescind and tender those securities that plaintiffs and the other members of the Class continue to own, in return for the consideration paid for those securities together with interest thereon (less the amount of any income received thereon). Plaintiffs and members of the Class who have sold their Fund shares are entitled to rescissory damages.

## COUNT III

### For Control Person Liability Under § 15 of the Securities Act

97. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

98. Plaintiffs do not allege that the material omissions and misstatements set forth herein were made intentionally, knowingly or recklessly by defendants. Rather, the conduct alleged herein was innocent, negligent or grossly negligent.

99. With respect to this claim for control person liability under Section 15 of the Securities Act, 15 U.S.C. § 77o, the defendants are The Charles Schwab Corporation; Schwab (in its capacity as principal operating subsidiary); Registrant Schwab Investments; CRS, and the Individual Defendants.

### The Charles Schwab Corporation as Control Person

100. The Charles Schwab Corporation is a controlling person of Schwab (in both its capacities as retail broker-dealer and underwriter), Registrant Schwab Investments, the Fund and CSIM: through stock ownership and otherwise; because it either controlled the dissemination of the Fund Prospectus Materials; had and exercised the power and influence to cause all of the other defendants to engage in the conduct complained of herein, and had the power to cause some or all of the other defendants to refrain from the conduct complained of herein.

101.   Defendants Schwab and CSIM are each wholly-owned subsidiaries of The Charles Schwab Corporation.

102.   The Charles Schwab Corporation also is a control person of Registrant Schwab Investments and the Fund because CRS is the founder, Chairman, Chief Executive Officer and a Director of The Charles Schwab Corporation; chairman of Schwab, and Chairman and Trustee of Registrant Schwab Investments.

**Schwab as Control Person**

103.   Schwab also is a control person of Registrant Schwab Investments, the Fund and CSIM because Schwab is the principal operating subsidiary of The Charles Schwab Corporation; CRS is chairman of Schwab, and defendants Merk and Dilsaver each were an Executive Vice President of Schwab while each was President and CEO of Registrant Schwab Investments and the Fund.

104.   Schwab is a controlling person of Registrant Schwab Investments, the Fund and CSIM because Schwab either controlled the dissemination of the Fund Prospectus Materials; had and exercised the power and influence to cause some or all of the other defendants to engage in the conduct complained of herein, and had the power to cause some or all of the other defendants to refrain from the conduct complained of herein.

105.   Schwab is a controlling person of Registrant Schwab Investments, the Fund and CSIM because (although an affiliate and not a parent of Registrant Schwab Investments, the Fund and CSIM), Schwab, as the principal operating subsidiary (of the Charles Schwab Corporation) which is a full-service broker-dealer, controlled the dissemination of the Fund Prospectus Materials; had and exercised the power and influence to cause some or all of the other defendants to engage in the conduct complained of herein, and had the power to cause some or

all of the other defendants to refrain from the conduct complained of herein.

106.    Schwab as the principal operating subsidiary of The Charles Schwab Corporation had sufficient direct and supervisory involvement in the operations of Registrant Schwab Investments, the Fund and CSIM to, as a practical matter, control the conduct of these affiliates. Therefore, Schwab is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

**CRS and the Individual Defendants as Control Persons**

107.    CRS is a control person of The Charles Schwab Corporation, Schwab, Registrant Schwab Investments, the Fund and CSIM because CRS is the founder, Chairman, Chief Executive Officer and a Director of The Charles Schwab Corporation; chairman of Schwab, and Chairman and Trustee of Registrant Schwab Investments.

108.    In addition, the Fund's Registration Statement and Statement of Additional Information state that "[a]s a result of his ownership of and interests in The Charles Schwab Corporation, Mr. Schwab may be deemed to be a controlling person of [CSIM] and Schwab."

109.    CRS was a culpable participant in the violations of §§ 11 and 12 of the Securities Act alleged in the Counts above, based on his having signed and authorized the signing of the Registration Statement and having otherwise participated in the process for the issuance, distribution, offer and sale of Fund shares.

110.    Each of the Individual Defendants was a control person of Registrant Schwab Investments and the Fund by virtue of his or her position as a Trustee and senior officer of Registrant Schwab Investments and the Fund.

111.    Each of the Individual Defendants was a culpable participant in the violations of §§ 11 and 12 of the Securities Act alleged in the Counts above, based on their having signed and

authorized the signing of the Registration Statements and having otherwise participated in the process for the issuance, distribution, offer and sale of Fund shares.

112.    As set forth above, The Charles Schwab Corporation; Schwab (in its capacity as principal operating subsidiary); Registrant Schwab Investments; CRS, and the Individual Defendants, each is a control person of at least one primary violator of Section 11 -- Registrant Schwab Investments, Schwab (as underwriter), CRS, and each of the Individual Defendants. By virtue of their positions as controlling persons of a primary violator, each of these defendants is also liable pursuant to Section 15 of the Securities Act.

113.    As set forth above, The Charles Schwab Corporation; Schwab (in its capacity as principal operating subsidiary); Registrant Schwab Investments; CRS, and the Individual Defendants, each is a control person of at least one primary violator of Section 12 -- The Charles Schwab Corporation; Registrant Schwab Investments; Schwab (in both its capacities as principal operating subsidiary and as principal underwriter); CSIM; CRS, and the Individual Defendants. By virtue of their positions as controlling persons of a primary violator, each of these defendants is also liable pursuant to Section 15 of the Securities Act.

114.    While the following concerns an affirmative defense that can be raised by only these control person defendants, and concerning which they bear the burden of proof, nevertheless, plaintiffs allege that each of these defendants, as a controlling person, cannot prove that it:  (a) had no knowledge of the existence of the facts by reason of which the liability of the controlled person is alleged to exist; or (b) had no reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

115.    As a direct and proximate result of these defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases of shares of

the Fund during the Class Period.

116.   The Charles Schwab Corporation; Schwab (in its capacity as principal operating subsidiary); Registrant Schwab Investments; CRS, and each of the Individual Defendants each violated Section 15 of the Securities Act, and each is liable to plaintiffs and the other members of the Class, in an amount to be proved at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, plaintiffs, on behalf of themselves and on behalf of the Class, pray for judgment as follows:

A.   Declaring this action to be a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying plaintiffs as class representatives of the Class and their counsel as Class counsel;

B.   Against defendants, jointly and severally, for damages suffered as a result of defendants' violations of the Securities Act, and/or awarding rescission under Section 12 of the Securities Act against defendants jointly and severally;

C.   Awarding plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees and expert witness fees and other costs and expenses; and

D.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.

Dated: April 16, 2008

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By: _____
Daniel W. Krasner (DK 6381)
Robert B. Weintraub (RW 2897)
270 Madison Avenue
New York, NY 10016
Telephone (212) 545-4600
Attorneys for Plaintiffs Hugh John Tully and
Penelope Carol Tully

Of Counsel:
Salon, Marrow, Dyckman
   & Newman LLP
John Paul Fulco (JF 2168)
292 Madison Avenue
New York, NY  10017
(212) 661-7100

506210v11

## PLAINTIFFS' CERTIFICATION

Hugh John Tully and Penelope Carol Tully ("Plaintiffs") each declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiffs have reviewed the complaint and authorized the commencement of an action on Plaintiffs' behalf.

2.    Plaintiffs did not purchase the security that is the subject of this action at the direction of plaintiffs' counsel or in order to participate in this private action.

3.    Plaintiffs are willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiffs' transactions in Schwab YieldPlus Fund securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|

*See attached sheets.*

5.    During the three years prior to the date of this Certificate, Plaintiffs have not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiffs have served as a class representative in the action(s) listed below:]

6.    Plaintiffs will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

Each of us declare under penalty of perjury that the foregoing is true and correct. Executed this _____14th_____ day of April, 2008.


_____            _____
Hugh John Tully                                            Penelope Carol Tully

Schwab Yield Plus Fund

| Name | Date Puchased | # Shares | Price | Date Sold | # Shares | Price |
|---|---|---|---|---|---|---|
| SWYPX | 6/27/2006 | 468.227 | 9.66 | 8/22/2007 | 1,021.213 | 9.45 |
| | 6/30/2006 | 0.337 | 9.66 | 8/20/2007 | 1,020.438 | 9.45 |
| | 7/31/2006 | 1.961 | 9.66 | | | |
| | 8/31/2006 | 2.081 | 9.67 | | | |
| | 9/29/2006 | 2.131 | 9.67 | | | |
| | 10/31/2006 | 2.018 | 9.68 | | | |
| | 11/30/2006 | 2.107 | 9.68 | | | |
| | 12/29/2006 | 2.195 | 9.69 | | | |
| | 1/31/2007 | 2.057 | 9.69 | | | |
| | 2/28/2007 | 2.055 | 9.69 | | | |
| | 3/30/2007 | 2.194 | 9.69 | | | |
| | 4/4/2007 | 516.407 | 9.69 | | | |
| | 4/4/2007 | 1,003.218 | 9.69 | | | |
| | 4/30/2007 | 3.933 | 9.69 | | | |
| | 4/30/2007 | 3.721 | 9.69 | | | |
| | 5/31/2007 | 4.461 | 9.68 | | | |
| | 5/31/2007 | 4.457 | 9.68 | | | |
| | 6/29/2007 | 4.57 | 9.67 | | | |
| | 6/29/2007 | 4.566 | 9.67 | | | |
| | 7/31/2007 | 4.479 | 9.62 | | | |
| | 7/31/2007 | 4.476 | 9.62 | | | |
| SWYSX | 8/19/2005 | 10,625.121 | 9.68 | 1/8/2007 | 1,032 | 9.69 |
| | 8/19/2005 | 42,460.345 | 9.68 | 4/3/2007 | 1,032 | 9.69 |
| | 8/31/2005 | 11.595 | 9.68 | 8/21/2007 | 2500 | 9.46 |
| | 8/31/2005 | 46.339 | 9.68 | 8/22/2007 | 42242.107 | 9.45 |
| | 9/30/2005 | 38.122 | 9.67 | 8/27/2007 | 15,646.739 | 9.44 |
| | 9/30/2005 | 118.51 | 9.67 | | | |
| | 9/30/2005 | 33.839 | 9.67 | | | |
| | 10/31/2005 | 35.621 | 9.66 | | | |
| | 10/31/2005 | 142.337 | 9.66 | | | |
| | 10/31/2005 | 0.013 | 9.66 | | | |
| | 11/23/2005 | 1,373.159 | 9.65 | | | |
| | 11/25/2005 | 2,220.276 | 9.65 | | | |

Schwab Yield Plus Fund

| Date | | |
|---|---|---|
| 11/30/2005 | 41.011 | 9.65 |
| 11/30/2005 | 156.354 | 9.65 |
| 12/30/2005 | 58.138 | 9.65 |
| 12/30/2005 | 174.102 | 9.65 |
| 1/31/2006 | 52.971 | 9.66 |
| 1/31/2006 | 158.627 | 9.66 |
| 2/28/2006 | 53.687 | 9.66 |
| 2/28/2006 | 160.781 | 9.66 |
| 3/31/2006 | 62.794 | 9.66 |
| 3/31/2006 | 188.045 | 9.66 |
| 4/28/2006 | 55.925 | 9.67 |
| 4/28/2006 | 167.476 | 9.67 |
| 5/31/2006 | 62.505 | 9.66 |
| 5/31/2006 | 187.181 | 9.66 |
| 6/30/2006 | 68.153 | 9.66 |
| 6/30/2006 | 204.088 | 9.66 |
| 7/31/2006 | 63.547 | 9.66 |
| 7/31/2006 | 190.298 | 9.66 |
| 8/31/2006 | 67.413 | 9.67 |
| 8/31/2006 | 201.877 | 9.67 |
| 9/29/2006 | 69.081 | 9.67 |
| 9/29/2006 | 206.868 | 9.67 |
| 10/31/2006 | 65.446 | 9.68 |
| 10/31/2006 | 195.982 | 9.68 |
| 11/30/2006 | 68.196 | 9.68 |
| 11/30/2006 | 204.219 | 9.68 |
| 12/29/2006 | 71.28 | 9.68 |
| 12/29/2006 | 213.458 | 9.68 |
| 1/31/2007 | 66.698 | 9.69 |
| 1/31/2007 | 196.239 | 9.69 |
| 2/28/2007 | 66.549 | 9.69 |
| 2/28/2007 | 194.766 | 9.69 |
| 3/30/2007 | 71.185 | 9.69 |
| 3/30/2007 | 208.338 | 9.69 |
| 4/30/2007 | 65.527 | 9.69 |
| 4/30/2007 | 187.685 | 9.69 |
| 5/31/2007 | 70.247 | 9.68 |

Schwab Yield Plus Fund

| | | |
|---|---|---|
| 5/31/2007 | 200.88 | 9.68 |
| 6/29/2007 | 71.963 | 9.67 |
| 6/29/2007 | 205.778 | 9.67 |
| 7/31/2007 | 70.529 | 9.62 |
| 7/31/2007 | 201.682 | 9.62 |

#507563